IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF OREGON

CATHY S.,[1]

        Plaintiff,

v.

COMMISSIONER, SOCIAL SECURITY ADMINISTRATION,

        Defendant.

Civ. No. 6:22-cv-01114-MC

OPINION AND ORDER

MCSHANE, Judge:

Plaintiff brings this action for judicial review of the Commissioner's decision denying her application for disability insurance benefits. This Court has jurisdiction under 42 U.S.C. §§ 405(g) and 1383(c)(3).

Plaintiff alleges disability beginning June 26, 2018. Tr. 13.[2] Plaintiff filed an application for benefits on July 22, 2018. Tr. 13. Her application was denied initially and upon reconsideration. After a hearing on June 4, 2021, the Administrative Law Judge (ALJ) determined Plaintiff was not disabled under the Social Security Act. Tr. 22. Plaintiff's request for Appeals Council review of the ALJ's decision was denied June 1, 2022. Tr. 1.

The ALJ found the Plaintiff had the following severe Medically Determinable

---

[1] In the interest of privacy, this opinion uses only the first name and the initial of the last name of the non-governmental party in this case.
[2] "Tr" refers to the Transcript of Social Security Administrative Record provided by the Commissioner.

1

Impairments (MDIs): chronic obstructive pulmonary disease (COPD), osteoarthritis, degenerative disc disease, ischemic heart disease, and peripheral neuropathy. Tr. 15. The ALJ found Plaintiff's medically determinable mental impairments were non-severe because evidence showed no more than mild limitations in any of the functional areas. Tr. 18. The ALJ then determined Plaintiff does not have an impairment or combination of impairments that meets or medically equals the severity of a listed impairment. Tr. 18. The ALJ discounted Plaintiff's subjective symptom testimony regarding intensity, persistence and limiting effects as "inconsistent with objective testing showing good cardiac function, significant response to respiratory treatments, and little in terms of musculoskeletal abnormalities." Tr. 20.

Accordingly, the ALJ determined Plaintiff had a Residual Functional Capacity to perform light work, including "occasionally climb ramps and stairs, but never climb ladders, ropes, or scaffolds." Tr. 18. She can "occasionally balance, stoop, kneel, crouch, and crawl." Tr. 18. She can tolerate "occasional exposure to extreme environmental cold, and occasional exposure to atmospheric conditions" and "to workplace hazards such as unprotected heights and exposed, moving machinery." Tr. 19. Finally, the ALJ determined Plaintiff "is capable of performing her past relevant work as a cashier checker and customer service clerk." Tr. 22.

Plaintiff argues the ALJ erred by (1) rejecting her subjective symptom testimony, (2) finding treating physician, Dr. Dilcher's medical opinion unpersuasive, and (3) rejecting lay witness statements from Plaintiff's husband. Because the ALJ's decision is based on proper legal standards and supported by substantial evidence, the ALJ's decision is AFFIRMED.

## **STANDARD OF REVIEW**

The reviewing court shall affirm the Commissioner's decision if the decision is based on proper legal standards and the legal findings are supported by substantial evidence in the record.

42 U.S.C. § 405(g); *Batson v. Comm'r of Soc. Sec. Admin.*, 359 F.3d 1190, 1193 (9th Cir. 2004). "Substantial evidence is 'more than a mere scintilla but less than a preponderance; it is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion.'" *Hill v. Astrue*, 698 F.3d 1153, 1159 (9th Cir. 2012) (quoting *Sandgathe v. Chater*, 108 F.3d 978, 980 (9th Cir. 1997)). "Under the substantial-evidence standard, a court looks to an existing administrative record and asks whether it contains sufficient evidence to support the agency's factual determinations." *Biestek v. Berryhill*, 139 S.Ct. 1148, 1154 (2019) (citation and internal quotation marks omitted). "[T]he threshold for such evidentiary sufficiency is not high." *Id.* "If the evidence can reasonably support either affirming or reversing, 'the reviewing court may not substitute its judgment' for that of the Commissioner." *Gutierrez v. Comm'r of Soc. Sec. Admin.*, 740 F.3d 519, 523 (9th Cir. 2014) (quoting *Reddick v. Chater*, 157 F.3d 715, 720-21 (9th Cir. 1996)).

## DISCUSSION

The Social Security Administration utilizes a five-step sequential evaluation to determine whether a claimant is disabled. 20 C.F.R. §§ 404.1520. The initial burden of proof rests upon the claimant to meet the first four steps. If the claimant satisfies his burden with respect to the first four steps, the burden shifts to the Commissioner for step five. 20 C.F.R. § 404.1520. At step five, the Commissioner must show that the claimant is capable of making an adjustment to other work after considering the claimant's residual functional capacity (RFC), age, education, and work experience. *Id*. If the Commissioner fails to meet this burden, then the claimant is disabled. 20 C.F.R. § 404.1520(a)(4)(v). If, however, the Commissioner proves that the claimant is able to perform other work existing in significant numbers in the national

economy, the claimant is not disabled. *Bustamante v. Massanari*, 262 F.3d 949, 953-54 (9th Cir. 2001).

I.

Plaintiff testified asthma, emphysema, and COPD cause her to "get out of breath quite easily." Tr. 222. Plaintiff further testified that "arthritis in my hands gives me pain all the time" and that her hands "really swell and get stiff" when working a cash register. Tr. 222. Plaintiff testified she has a "20-minute attention span," can walk no more than 2 blocks at a time and that she does not "want to go anywhere." Tr. 227. Plaintiff testified she is "tired all the time and [] become[s] very sleepy throughout the day." Tr. 229. In later written testimony, Plaintiff said she has a "real problem being around people, even family gatherings stresses me out." Tr. 276. Plaintiff testified she can walk for a block before needing to stop for a rest and that she can pay attention for an "hour before I need to walk away for a minute." Tr. 281. Plaintiff testified she has no problem following written instructions and follows spoken instructions "ok." Tr. Plaintiff testified she does not sleep well and has memory problems. Tr. 41-42.

Plaintiff argues the ALJ erred by rejecting Plaintiff's subjective symptom testimony without providing specific, clear, and convincing reasons supported by substantial evidence. Pl. Br. at 8. ALJs consider the "intensity, persistence, and limiting effects of an individual's symptoms," by examining the record as a whole. SSR 16-3P2017 WL 5180304. The ALJ considers "inconsistencies in the evidence and the extent to which there are conflicts between [a claimant's] statements and the rest of the evidence . . . .." 20 C.F.R. § 404.1529(c)(4). When a claimant has MDIs that could reasonably be expected to produce some degree of the symptoms complained of, and the record contains no affirmative evidence of malingering, "the ALJ can reject the claimant's testimony about the severity of ... symptoms only by offering specific,

clear and convincing reasons for doing so." *Smolen v. Chater*, 80 F.3d 1273, 1281 (9th Cir. 1996) (internal citation omitted). The reasons proffered must be "sufficiently specific to permit the reviewing court to conclude that the ALJ did not arbitrarily discredit the claimant's testimony." *Orteza v. Shalala*, 50 F.3d 748, 750 (9th Cir. 1995) (internal citation omitted). In other words, the "clear and convincing" standard requires an ALJ to "show [their] work." *Smartt v. Kijakazi*, 53 F.4th 489, 499 (9th Cir. 2022).

Plaintiff argues that in rejecting her subjective symptom testimony, the ALJ "merely summarized medical evidence with a focus on essentially normal finding and evidence suggesting improvement." Pl. Br. at 10. Plaintiff concludes that the ALJ "identified no basis to reject her allegations that her physical conditions impacted her ability to concentrate and follow instructions, and that she experienced fatigue that impacted her motivation to leave home and interact with others – even family." Pl. Br. at 10.

The record supports the ALJ's findings that statements regarding the intensity, persistence, and limiting effects of Plaintiff's symptoms were inconsistent with "objective testing showing good cardiac function, significant response to respiratory treatments, and little in terms of musculoskeletal abnormalities." Tr. 20. For example, after two hospitalizations for COPD exacerbation, Plaintiff's pulmonary test results normalized, and she told her pulmonologist she "feels very close to back to normal." Tr. 20, 1131, 1128. Plaintiff reported "feeling well" and was "busy and active" during cardiac rehabilitation. Tr. 835.  Additionally, Plaintiff ended cardiac rehabilitation after completing only 8 of 28 sessions because she "did not feel the need to continue." Tr. 20, 830, 1253.

Concerning Plaintiff's osteoarthritis, the ALJ noted imaging of the joints did not show significant abnormalities. Tr. 20, 762, 1106, 1108. The ALJ explained there are "no apparent

records showing the swelling she described in a function report," that Plaintiff "denied taking any medications for [arthritis]" and that, despite stated difficulty using her hands, Plaintiff was "able to complete multiple handwritten reports neatly." Tr. 19, 221-229, 230-237, 254-255, 257-259, 276-282. Furthermore, during a consultative examination, the doctor found Plaintiff could "make a full fist," had a normal range of finger motion with no joint deformities, had "no synovial thickening," and "no tenderness to joint palpitation." Tr. 1160. The consultative examiner noted Plaintiff was "[a]ble to manipulate items without difficulty." Tr. 1160. Plaintiff's daily activity reports state she gardens daily and can perform household chores such as "light cleaning, laundry, dishes, watering yard and plants, trimming flowers, and fertilizing." Tr. 225.

      Additionally, the record supports the ALJ's findings that Plaintiff's statements concerning mental impairments have been "inconsistent and suggestive of transient issues." Tr. 16. Plaintiff had endorsed moderately severe depressive symptoms on two prior Patient Health Questionnaires (PHQ-9), but her most recent PHQ-9 shows depression severity at "none/normal" level. Tr. 710–711, 860, 1265–1268. Plaintiff's records show she responded well to antidepressant medication. Tr. 804. Patient records indicate her depression was "in partial remission." Tr. 1268. Plaintiff also stated that PTSD and depression were "well-regulated" and that "[d]epression is not a huge problem, it just comes and goes." Tr. 1270. Plaintiff discontinued therapy for PTSD and depression after only three sessions. Tr. 903, 1236, 1151. During a consultative psychological exam, Dr. Sean Bennet noted Plaintiff "suffers from classic symptoms of anxiety and depression. Tr. 1154. Dr. Bennet then determined Plaintiff is able to "understand, retain, and follow instructions; sustain attention to perform simple and repetitive tasks; relate to others, including fellow workers and supervisor; and tolerate the stress/pressures

associated with day-to-day work activity. Tr. 1155. Dr. Bennet's findings are supported by reports from State agency non-examining psychological consultants, who also found Plaintiff's mental impairments were non-severe with only "mild limitations across the B criteria." Tr. 17, 67, 89.

After a detailed review of Plaintiff's symptom testimony, objective medical evidence, medical opinion, and other evidence, the ALJ came to the reasonably concluded that Plaintiff was not as limited by her symptoms as alleged. In sum, the ALJ's decision is based on clear and convincing reasons supported by substantial evidence in the record.

## II.

Plaintiff argues the ALJ erred in rejecting the medical opinion of Kanani Dilcher, MD. Pl. Br. at 5. The most important considerations in evaluating medical opinions are (1) supportability and (2) consistency. 20 C.F.R. § 404.1520c(a). The most persuasive medical opinions are consistent with other medical opinions (and prior administrative findings) of record. 20 C.F.R. § 404.1520c(c)(2). Under the revised regulations, an ALJ is no longer required to provide "specific and legitimate reasons for rejecting an examining doctor's opinion." *Woods v. Kijakazi*, 32 F.4th 785, 787 (9th Cir. 2022). Instead, an ALJ's "decision to discredit any medical opinion, must simply be supported by substantial evidence." *Id*. "An ALJ can satisfy the substantial evidence requirement by setting out a detailed and thorough summary of the facts and conflicting clinical evidence, stating his interpretation thereof, and making findings." *Garrison v. Colvin*, 759 F.3d 995, 1012 (9th Cir. 2014).

Dr. Dilcher provided form testimony to Plaintiff's counsel, stating that "PTSD limits interaction due to hypersensitivity, criticism" and "COPD limits exertional capability." Tr. 16, 818. Additionally, Dr. Dilcher noted Plaintiff has "marked limitations in interacting

7

appropriately with others" and "responding appropriately to usual work situations." Tr. 16, 821. Dr. Dilcher stated "PTSD limits above due to severe anxiety with this." Tr. 821. Plaintiff argues that if Dr. Dilcher's opinion were properly credited, the ALJ would find Plaintiff cannot sustain her customer-focused work as a cashier or customer service clerk. Pl. Br. at 7. As discussed below, the ALJ properly weighed the supportability and consistency of Dr. Dilcher's opinion and provided substantial evidence for rejecting it.

      The ALJ found Dr. Dilcher's opinion unpersuasive because the "degree of limitation assessed is not consistent with a longitudinal treatment record" and the record "lacks any corroborative information relating to such significant limits with social interactions." Tr. 16. For example, Dr. Dilcher's testimony that PTSD limits Plaintiff's social interactions conflicts with Plaintiff's testimony that she had PTSD and depression "for years" while consistently earning income at SGA levels up to her alleged onset date. Tr. 17, 818. Additionally, an independent review of the record shows Dr. Dilcher's notes regarding Plaintiff's PTSD begin October 21, 2019, the same date Dr. Dilcher's written testimony regarding the severity of Plaintiff's PTSD symptoms was submitted. Tr. 903, 822. Dr. Dilcher's notes from the October 21, 2019, visit state Plaintiff has "severe PTSD" that "we have not spoken about much, as she has reviewed this with other docs prior to me." Tr. 903. However, there is no diagnosis of PTSD prior to October 21, 2019, and Plaintiff denied having PTSD prior to that date. Tr. 766.

      As discussed in Section I above, the reports of both consultative and non-examining doctors indicate Plaintiff's social limitations are mild and she has been able to adapt and manage the condition.  Tr. 67, 89, 1155. An ALJ need not give controlling weight to a treating physician's opinion if that opinion is not "well-supported by medically acceptable clinical and laboratory diagnostic techniques" or is "inconsistent with the other substantial evidence in [the]

case record." 20 C.F.R. § 404.1527(c)(2); *see also Ford v. Saul*, 950 F.3d 1141, 1154 (9th Cir. 2020) ("[an] ALJ may discount the treating physician's opinion by giving "specific and legitimate reasons" that are supported by substantial evidence in the record) (quoting *Lester v. Chater*, 81 F.3d 821, 830 (9th Cir. 1995)). In contrast with Dr. Dilcher's opinion, the opinions of the consultative and non-examining doctors were persuasive because they were consistent and supported by the record as a whole. Tr. 16-17.

    The ALJ did not err in rejecting Dr. Dilcher's opinion.

### III.

    Finally, Plaintiff argues the ALJ erred in rejecting lay witness statements from Plaintiff's spouse. ALJs are "not required to articulate how [they] considered evidence from nonmedical sources" using the requirements that govern medical source opinions. 20 C.F.R. §§ 404.1520c(d); 416.920c(d). "An ALJ need only give germane reasons for discrediting the testimony of lay witnesses. Inconsistency with medical evidence is one such reason." *Bayliss v. Barnhart*, 427 F.3d 1211, 1218 (9th Cir. 2005) (*citing Lewis v. Apfel,* 236 F.3d 503, 511 (9th Cir.2001) (internal quotations omitted). Additionally, lay witness testimony may be discredited if such testimony "'generally repeat[s]' the properly discredited testimony of a claimant." *Bailey v. Colvin*, 2014 WL 2013435, at *7 (D. Or. May 12, 2014), *aff'd*, 669 F. App'x 839 (9th Cir. 2016) (quoting *Bayliss v. Barnhart,* 427 F.3d 1211, 1218 (9th Cir.2005)).

    In this case, the ALJ determined that Plaintiff's husband's testimony consisted of many of the same issues as Plaintiff's own testimony. Tr. 19. The ALJ then properly rejected Plaintiff's husband's testimony as inconsistent with the medical evidence for the same reasons the ALJ discredited Plaintiff's symptom testimony. Tr. 19. Therefore, because the ALJ provided

clear and convincing reasons for rejecting Plaintiff's subjective testimony, the ALJ did not err in rejecting Plaintiff's husband's testimony consisting of the same issues.

## CONCLUSION

The ALJ's decision is based on proper legal standards and supported by substantial evidence. The Commissioner's final decision is therefore AFFIRMED.

IT IS SO ORDERED.

DATED this 2th day of January, 2024.

/s/ Michael McShane
Michael J. McShane
United States District Judge